**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---------------------------------------x
                                       :
WENDELL WILLIAMS, Individually and on  :  Case No. 05-CV-10413 (JLT)
behalf of all others similarly situated, :
                                       :  <u>CLASS ACTION</u>
               Plaintiff,              :
                                       :
      vs.                              :
                                       :
ELAN CORPORATION, PLC., G. KELLY       :
MARTIN, LARS ECKMAN and SHANE          :
COOKE,                                 :
                                       :
               Defendants.             :
                                       :
---------------------------------------
                                       :
SIDNEY D. FELDMAN FAMILY TRUST,        :  Case No. 05-CV-10481 (JLT)
Individually and on behalf of all others similarly :
situated,                              :  CLASS ACTION
                                       :
               Plaintiff,              :
                                       :
      vs.                              :
                                       :
ELAN CORPORATION, PLC., G. KELLY       :
MARTIN, LARS ECKMAN and SHANE          :
COOKE,                                 :
                                       :
               Defendants.             :
                                       :

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**THE INSTITUTIONAL INVESTOR GROUP FOR CONSOLIDATION, APPOINTMENT**
**AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL AND**
<u>**LIAISON COUNSEL**</u>

## **INTRODUCTION**

Class members MN Services, Activest Investmentgesellschaft mbH, Electronic Trading Group L.L.C., Third Millenium Trading, LLP, Horatio Capital LLC, and Donald S. Frank (the "Institutional Investor Group" or "Movants") hereby move this Court for entry of an order: (1) consolidating the above-captioned actions (the "Actions"); (2) appointing the Institutional Investor Group as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (3) approving the Institutional Investor Group's selection of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") and Entwistle & Cappucci LLP to serve as Lead Counsel, and Moulton & Gans, P.C. to serve as Liaison Counsel pursuant to the PSLRA.

Pursuant to the PSLRA, prior to selecting a Lead Plaintiff, the Court must decide whether to consolidate the Actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).[1] As soon as practicable after a decision on consolidation has been rendered, the Court is to appoint as the Lead Plaintiff the movant or group of movants with the largest financial interest of those seeking such appointment in the litigation and which otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See id.*

In Point I, Movants submit that the above-captioned actions should be consolidated because they each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a). In Point II, Movants argue that they should be appointed Lead Plaintiff and that their selection of

---

[1] Actions substantially similar to the above-captioned actions are pending in the Northern District of Illinois, Eastern Division and the Southern District of New York. These are: (i) *Barnett v. Elan Corp., PLC*, No. 05-CV-2860 (RJH) (S.D.N.Y. filed Mar. 15, 2005); (ii) *Malloff v. Elan Corp., PLC*, No. 05-CV-3166 (RJH) (S.D.N.Y. filed Mar. 23, 2005) and (iii) *Hunt v. Elan Corp., PLC*, No. 05-CV-2367 (N.D. Ill. filed Apr. 21, 2005) (MF). The PSLRA requires that the court rule on any consolidation motion prior to deciding the lead plaintiff/lead counsel issue. *See* 15 U.S.C. § 78u-4(a)(4)(B)(ii). The rationale behind the rule -- that multiple lead plaintiff/lead counsel should not be appointed to oversee a single class -- would imply that a court should not rule on the lead plaintiff/lead counsel motion when, as here, related actions are pending elsewhere and cannot be consolidated. We anticipate that the actions will be transferred to one forum, either by agreement or motion. We have filed this motion now, as opposed to waiting until all actions are in one district, because, as discussed below, the PSLRA imposes a motion deadline. We have filed similar motions in each of the other districts.

Lead Counsel should be approved because the Institutional Investor Group: (1) timely filed for a motion for appointment of Lead Plaintiff; (2) suffered losses of **$17,985,086** in connection with transactions in Elan securities during the Class Period (February 18, 2004 and February 28, 2005), and thus have a substantial financial interest; and (3) will adequately represent the interests of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). In Point III, the Institutional Investor Group argues that its selection of Milberg Weiss and Entwistle & Cappucci as Lead Counsel should be approved by the Court because, pursuant to the PSLRA, the presumptive Lead Plaintiff selects Lead Counsel and Milberg Weiss and Entwistle & Cappucci each have extensive experience in the prosecution of securities class actions and will more than adequately represent the interests of the class. Moulton & Gans, selected as Liaison Counsel, is also well experienced in securities class actions, has its office in this District and has represented classes of investors together with Milberg Weiss numerous times in this District.

## **FACTUAL BACKGROUND**[2]

Elan is a pharmaceutical company that is collaborating with Biogen IDEC Inc. ("Biogen") on the development and marketing of Tysabri, a drug used in the treatment of multiple sclerosis ("MS"). These claims arise out of defendants' false and misleading statements and omissions concerning the safety of Tysabri for use in the treatment of MS. Food and Drug Administration ("FDA") approval to market Tysabri was granted in November 2004, on an expedited basis, after completion of only one year of two ongoing two-year clinical trials of the drug. Defendants' duty to monitor for the potential side effects of Tysabri and disclose them was heightened because Tysabri was approved for use by the general public on the basis of

---

[2] The factual allegations set forth herein are taken from the complaint in *Malloff v. Elan Corp., PLC*, No. 05-CV-3166 (RJH) (S.D.N.Y. filed Mar. 23, 2005), which are substantially similar to the allegations in the actions before this Court.

incomplete data. Yet despite their heightened duties, at all times during the Class Period, defendants knew or recklessly disregarded and failed to disclosed the following: (a) animal and human studies of Tysabri showed a significant risk of adverse effects resulting from suppression of the immune system; (b) the clinical trials of Tysabri and Tysabri in combination with Biogen's existing MS drug, Avonex, failed to include the full range of medical tests required to detect the type of adverse side effects likely to result from extended treatment with Tysabri, including "PML" (Progressive Multifocal Leukoencephalopathy), a frequently fatal disease of the central nervous system; and (c) the potentially fatal side effects of Tysabri were cumulative such that there was a significant possibility that they would not become apparent after only a year or even two years of clinical trials.

By at least as early as February 7, 2005, defendants knew or recklessly disregarded that at least one subject of the clinical trials who had received Tysabri in combination with Avonex had become seriously ill, with symptoms of PML, such that the subject required hospitalization. By at least as early as February 18, 2005, defendants knew or recklessly disregarded that another patient had contracted what appeared to be PML. On February 24, 2005, one of the two patients died from PML. However, it was not until February 28, 2005, at least 21 days after the first PML-related hospitalization, that defendants disclosed to the investing public that anything was amiss – much less that two trial subjects had contracted PML, that one of them had already died of the disease, and that Tysabri was likely the cause.[3]

---

[3] Actions alleging violations of the securities laws are also pending against Biogen and its insiders, in this District, also stemming from defendants' misrepresentations regarding Tysabri.

## POINT I

## THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42 (a). The Actions assert class claims on behalf of those who purchased or otherwise acquired Elan securities for alleged violations of the Exchange Act during overlapping class periods.[4] The Actions each name the Company and certain of its officers and/or directors as defendants and involve the same factual and legal issues. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990). That test is met here. Therefore, the Actions should be consolidated.

## POINT II

## THE INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Institutional Investor Group should be appointed Lead Plaintiff because it has complied with all of the PSLRA's requirements, has demonstrated the largest financial interest in this litigation and otherwise meets the relevant requirements of Fed. R. Civ. P. 23. As the presumptive Lead Plaintiff, the Institutional Investor Group's selection of the law firms of Milberg Weiss and Entwistle & Cappucci to serve as Lead Counsel, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), and Moulton & Gans as Liaison Counsel, should be approved by the Court.

---

[4] The *Williams* action alleges a class period of January 29, 2004 to March 30, 2005, while the *Feldman Family Trust* action alleges a class period of February 18, 2004 to February 25, 2005. The differences among class periods does not pose an obstacle to consolidation. *See*, *e.g.*, *In re Century Bus. Servs. Sec. Litig.*, 202 F.R.D. 532, 537 (N.D. Ohio 2001) (consolidating suits involving class periods with no overlap in time); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129 (C.D. Cal. 1999) (consolidating suits despite differences in class period); *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) (same).

### A.     The PSLRA's Procedural Prerequisites

The PSLRA establishes a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first filed, above-captioned action, caused notice to be published on *PrimeZone Media Network* on March 3, 2005. *See* Exhibit A.[5]

Second, within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Finally, the PSLRA provides that within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and

---

[5]  All exhibit references herein are to the Declaration of Nancy Freeman Gans, submitted herewith.

      (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See generally In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 42 (D. Mass. 2001) (Saris, J.).

      **B.    The Institutional Investor Group Satisfies The Lead Plaintiff Requirements Of The PSLRA**

          **1.    The Institutional Investor Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff**

The time period in which class members may move to be appointed Lead Plaintiff in this case, under 15 U.S.C. § 78u-4(a)(3)(A) and (B), expires on May 3, 2005 (*i.e.*, 60 days from the notice issued March 3, 2005). The Institutional Investor Group's application is thus timely. Each member of the Institutional Investor Group has reviewed the complaint and is willing to serve as a representative party on behalf of the Class. *See* Exhibit B (attaching certifications of the Institutional Investor Group members). In addition, the Institutional Investor Group has selected and retained competent counsel to represent it and the Class. *See* Exhibit D-F. Accordingly, the Institutional Investor Group has satisfied the prerequisites of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff, and its selection of Milberg Weiss and Entwistle & Cappucci as Lead Counsel, and Moulton & Gans as Liaison Counsel, approved by the Court.

          **2.    The Institutional Investor Group Has The Requisite Financial Interest In The Relief Sought By The Class**

During the Class Period (February 18, 2004 to February 28, 2005), as evidenced by, among other things, the accompanying signed certifications and chart showing the Institutional Investor Group's Class Period transactions, *see* Exhibit D, the Institutional Investor Group purchased **2,936,041** shares of Elan common stock at prices artificially inflated by the materially

false and misleading statements issued by defendants and were injured. In addition, the Institutional Investor Group incurred a substantial loss of approximately *$17,985,086* on its transactions in Elan stock, which, it believes, constitutes the largest financial interest in this litigation. *See* Exhibit D; 15 U.S.C. § 78u-4(a)(3)(B).

### 3. The Institutional Investor Group Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, courts limit their inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d at 46. The Institutional Investor Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986); *Babcock v. Computer*

*Assocs. Int'l, Inc.*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted).

The Institutional Investor Group satisfies this requirement because, just like all other Class members, its members: (1) purchased or otherwise acquired Elan securities during the Class Period; (2) purchased or otherwise acquired Elan securities at prices artificially inflated as a result of the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. Thus, the Institutional Investor Group members' claims are typical of those of other Class members since their claims and the claims of other Class members arise out of the same course of events.

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." Pursuant to the PSLRA, the standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the proposed lead plaintiff and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *Babcock*, 212 F.R.D. at 131 (citation omitted).

Here, the Institutional Investor Group is an adequate representative of the class. As evidenced by the injury suffered by the Institutional Investor Group (losses of approximately $17,985,086), incurred as a result of acquiring Elan securities at prices artificially inflated by

defendants' materially false and misleading statements, the interests of Movants are clearly aligned with the interests of the members of the Class, and there is no evidence of any antagonism between the Movants' interests and those of the other members of the Class. Further, the Institutional Investor Group has taken significant steps which demonstrate it will protect the interests of the Class: it has retained competent and experienced counsel to prosecute these claims and to further investigate the facts giving rise to this action.  In addition, as shown below, the Institutional Investor Group's proposed Lead Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, the Institutional Investor Group *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### 4. The Institutional Lead Plaintiff Group Is The Ideal Lead Plaintiff

The Institutional Lead Plaintiff Group is comprised of five institutional investors and an individual investor. One of the PSLRA's main goals was to encourage institutional investors to take the reins in securities class actions:

> Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members.

*In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (Citations omitted). At the same time, Courts have held that a group comprised of institutional and individual investors diversity of representation of the class, which is itself comprised of institutional and individual investors:

> The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions. ***Allowing for diverse representation, including in this case a state pension fund, significant individual investors and a large institutional investor, ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the***

*negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants*.

*In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998) (Emphasis added).

Thus, appointing the Institutional Investor Group would satisfy two critical PSLRA goals.

## POINT III

### THE INSTITUTIONAL INVESTOR GROUP'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL SHOULD BE APPROVED

The Institutional Investor Group has selected Milberg Weiss and Entwistle & Cappucci to serve as Lead Counsel and Moulton & Gans as Liaison Counsel, subject to Court approval. Milberg Weiss and Entwistle & Cappucci possess extensive experience litigating securities class actions and have been responsible for some of the largest recoveries in the field. *See* Exhibits D-E (attaching the firm resumes of Milberg Weiss and Entwistle & Cappucci). Moulton & Gans is also experienced in securities class action and has served as Liaison Counsel, with Milberg Weiss as Lead Counsel, in many actions in this District. *See* Exhibit E (Moulton & Gans resume).

## CONCLUSION

The Institutional Investor Group respectfully requests that this Court: (1) consolidate the Actions; (2) appoint the Institutional Investor Group as Lead Plaintiff pursuant to § 21D (a)(3)(B) and (3) approve its selection of Milberg Weiss and Entwistle & Cappucci as Lead Counsel and Moulton & Gans as Liaison Counsel.

| | |
|---|---|
| May 3, 2005<br>Boston, Massachusetts. | Respectfully submitted:<br>**MOULTON & GANS, P.C.**<br><br>By: /s/ Nancy Freeman Gans<br>Nancy Freeman Gans, BBO #184540<br>33 Broad Street, Suite 1100<br>Boston, MA  02109<br>Telephone:  (617) 369-7979<br><br>*Proposed Liaison Counsel*<br><br>**MILBERG WEISS BERSHAD<br> & SCHULMAN LLP**<br>Steven G. Schulman<br>Anita B. Kartalopoulos<br>Sharon M. Lee<br>One Pennsylvania Plaza<br>New York, NY 10119<br>(212) 594-5300<br><br>**ENTWISTLE & CAPPUCCI LLP**<br>Vincent R. Cappucci<br>Stephen D. Oestreich<br>Robert N. Cappucci<br>299 Park Avenue<br>New York, NY  10171<br><br>*Proposed Lead Counsel* |

## CERTIFICATE OF SERVICE

I, Nancy Freeman Gans, hereby certify that a true copy of the above document was served upon the attorney of record for each party.

/s/ Nancy Freeman Gans
Nancy Freeman Gans