**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| WENDEL WILLIAMS, Individually and on Behalf Of All Others Similarly Situated, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ELAN CORP., PLC et al., )<br>)<br>Defendants. )<br>_____) | Case No:1:05-CV-10413-JLT |
| SIDNEY D. FELDMAN FAMILY TRUST, )<br>Individually and on Behalf Of All Others Similarly )<br>Situated, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ELAN CORP., PLC et al., )<br>)<br>Defendants. )<br>_____) | Case No:1:05-CV-10481-JLT |

**PRELIMINARY STATEMENT**

Presently pending before this Court are two class action lawsuits (the "Actions") against Elan Corp., PLC ("Elan" or the "Company"). The Actions are brought on behalf of all those who purchase or otherwise acquire the securities of Elan between January 29, 2004 and March 30, 2005 (the "Class Period")[1], and allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 as amended by the Private Securities Reform Act of 1995 (15 U.S.C. § 78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

---

[1] Plaintiff Williams amended his complaint by enlarging the Class Period to cover the period January 29, 2004 and March 30, 2005.

Plaintiff William Haddad (the "Movant" or "Haddad") hereby moves this Court for an order to: (i) appoint Movant as the Lead Plaintiff in the Actions under Section 27(a)(3)(B) of the Exchange Act on behalf of all persons who purchased the securities of Elan (the "Class") during the aforementioned Class Period (the "Class Period"), and (ii) approve Movant's selection of the law firm of Bull & Lifshitz, LLP ("Bull & Lifshitz") to serve as Lead Counsel and the law firm of Shapiro Haber & Urmy LLP ("Shapiro Haber") as Liaison Counsel on behalf of the Class.

This motion is made on the grounds that Movant is the most adequate plaintiff, as defined by the Private Securities Litigation Reform Act (the "PSLRA"). Movant suffered a loss of more than $200,000.00 in connection with his purchase of Elan Securities. See Hess-Mahan Decl. Ex B.[2] To the best of our knowledge, this is the greatest loss sustained by any individual moving Elan class member to serve as Lead Plaintiff in this Action. In addition, Movant, for the purposes of this motion, adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that his claims are typical of the claims of the putative class and in that they will fairly and adequately represent the interests of the class.

## FACTUAL BACKGROUND

Elan is one of the world's leading pharmaceutical companies. In its research and focus on neurological diseases, Elan developed the drug Tysabri, (natalizumbab) formerly known as Antegren, which was touted as a promising treatment for Multiple Sclerosis (MS) by preventing immune cells from migrating from the bloodstream into the

---

[2] References to the "Hess-Mahan Decl. Ex. ___" are to the exhibits attached to the accompanying declaration of Theodore M. Hess-Mahan, Esq., dated May 3, 2005 and submitted herewith.

brain where they can damage nerve fibers.  At its core however, the drug would suppress an individual's immune system.

Elan began collaborating with Biogen IDEC Inc. ("Biogen") to develop and market the drug Tysabri which was approved for marketing by the Food and Drug Administration ("FDA") in November 2004.  Elan and Biogen formed a Joint Steering Committee that was required to disseminate information between the two companies as well as a Joint Project Team that was responsible for developing, among other things, standard operating procedures for reporting adverse events.  The FDA granted approval for use of the drug after the conclusion of only one year of two ongoing two-year clinical trials.  As such, Defendants had a heightened duty of care to the users of Tysabri because the studies were still ongoing and conclusions about the efficacy and safety of the drug were not finalized.

However, during the class period, Defendants made numerous statements to the public which were misleading and which failed to disclose that: a) animal and human studies of Tysabri showed a significant risk of adverse effects resulting from suppression of the immune system; b) the clinical trials of Tysabri and Tysabri in combination with Biogen's existing MS drug Avonex, failed to include tests such as lumbar punctures which are the only reliable way of detecting early-onset of Progressive Multifocal Leukoencephalopathy (PML) a fatal disease of the nervous system; and c) the potentially fatal side effects of Tysabri were cumulative such that detection of an immune system failure would not become apparent during the one to two years that the clinical trials were occurring.

By at least February 7, 2005, Defendants knew or recklessly disregarded that at least one participant of the trials that had received the drug and Avonex had developed symptoms of PML which required hospitalization. Similarly, at least as early as February 18, 2005, Defendants knew or disregarded that another subject had been hospitalized with PML symptoms, and on February 24, 2005, one of the two participants died from PML. However, not until February 28, 2005, at least 21 days after the first subject had required hospitalization for PML related symptoms did the Company notify its investors of a concern or that Tysbari had likely caused PML symptoms in two patients and the consequential death of one.

When news of the serious side-effects of the drug finally broke, the stock price took a tremendous dive downward. Elan fell ∈13.81 per common share, or 68% to ∈6.49 at the end of trading in Dublin, Ireland.[3]  On February 28, 2005, in the United States, Elan ADRs (American Depositary Receipts) lost 70% of their value falling from a value of $26.90 to a low of $7.90 to close at $8.00 on a trading volume of 165,358,896 shares. Such a large public response (Elan and Biogen lost more than $17 billion in market capitalization) is clear evidence of the materiality of the information which was finally disclosed, which raises a strong inference of recklessness if not actual knowledge of the previously undisclosed condition of the trial participants and the dangers of this "miracle" drug.

---

[3] Elan's executive offices are located in Ireland.

## ARGUMENT

### POINT I

### THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Each of the Actions assert class claims on behalf of the purchasers of Elan securities for alleged violation of the Exchange Act during the relevant time period. The Actions name the same defendants and involve the same factual and legal issues. They are each brought by investors who purchased Elan securities during the relevant time period in reliance on the integrity of the market for such securities and were injured by the fraud on the market that was perpetrated through the issuance of materially false and misleading statements and concealment of material information, thus artificially inflating the prices of Elan securities at all relevant times. Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42(a). See Johnson v. Celotex, Corp., 899 f.2d 1281, 1284 (3d Cir.); cert. denied, 498 U.S. 920 (1990). That test is met here and, accordingly, the Actions should be consolidated.

### POINT II

### MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

#### A. The Procedure Required by the PSLRA

The PSLRA has established a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff in the action captioned Williams v. Elan Corp, PLC et al. caused notice to be published on March 4, 2005. See Hess-Mahan Decl. Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that within 90 days after publication of the notice the Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of the class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this ACT is the person or group of persons that:
>
> > (aa) has either filed the complaint or made a motion in response to a notice…
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See generally* Greebel, 939 F. Supp at 64.

### B. Movant Satisfies the "Lead Plaintiff" Requirements of the Exchange Act

#### 1. Movant Has Complied With the Exchange Act and

**And Should Be Appointed The Lead Plaintiff**

The time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. § 78u-4(a)(3)(A) and (B) expires on May 3, 2005.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on March 4, 2005), Movant timely moves this Court to be appointed the Lead Plaintiff.

Movant has duly signed and filed a certification that it has reviewed the allegations of the Actions and is willing to serve as a representative party on behalf of the Class.  See Hess-Mahan Decl Ex. C.  In addition, Movant has selected and retained competent counsel to represent him and the Class.  See Hess-Mahan Decl. Exs. D and E.  Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and its selection of Bull & Lifshitz, LLP and Shapiro Haber & Urmy LLP to serve as Lead and Liaison Counsel, respectively, considered and approved by the Court.

    2.  **Movant Has The Requisite Financial Interest In the Relief Sought By The Class**

During the Class Period, as evidenced by, among other things, the accompanying signed certification, see Hess-Mahan Decl. Ex. C., Movant purchased shares of Elan stock in reliance upon the materially false and misleading statements issued by the defendant(s) and was injured thereby.  Indeed, Movant, individually has incurred a loss of more than $200,000.00 on his transactions in Elan publicly traded securities and thus has a significant financial interest in this case.  Therefore, Movant satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3. **Movant Otherwise Satisfies Rule 23**

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest individual financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. First Merchants, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb 6, 1997). Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. See Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class

representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. See Pries v. Zavre Corp., 118 F.R.D. 552, 555 (D. Mass. 1998) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] member")(citations omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. Phillips v. Joint Legislative Comm. On Performance & Expenditure Review, 637 F.2d 1014, 1024 (5th Cir. 1981).

Movant satisfies this requirement because just like all other class members, he (1) purchase Elan securities during the Class period; (2) purchased Elan securities in reliance upon the allegedly materially false and misleading statements issued by defendant(s); and (3) suffered damages thereby. This Movants' claims are typical of those of other class members since his claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of Movants to represent the class to the existence of any conflicts between the interest of the Movants and the members of the class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) the class representatives' choice of counsel who is qualifies,

9

experienced and able to vigorously conduct the proposed litigation. Modell v. Eliot Sav. Bank, 139 F.R.D. 17, 23 (D. Mass 1991) (citing Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).

Here, Movant's interests are clearly aligned with the members of the proposed classes. Movant is an adequate representative of the preferred shareholder class. As evidenced by the injury suffered by Movant who has purchased the Elan securities at prices allegedly artificially inflated by defendants' materially false and misleading statements, Movant's interests are clearly aligned with the members of the proposed classes, and there is no evidence of any antagonism between Movant's interests and those members of the proposed classes. Further, Movant has taken significant steps which demonstrate that he will protect the interests of the Class: he has moved to be the Lead Plaintiff: he has retained competent and experienced counsel to prosecute these claims. In addition, as shown below, Movant's proposed Lead Counsel for the Class are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movant prima facie satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

## POINT III

### THE COURT SHOULD APPROVE MOTVANT'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. In that regard, the Movant has selected Bull & Lifshitz, LLP as Lead Counsel and Shapiro Haber & Urmy LLP as Liaison Counsel for the Class. Both Bull & Lifshitz, LLP and Shapiro Haber & Urmy LLP have substantial experience in the prosecution of

shareholder and securities class actions. See Hess-Mahan, Decl., Exs. D and E. Accordingly, the Court should approve Movant's selection of Counsel for the Class.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint Movant as the Lead Plaintiff in the Actions; (iii) approve Movant's selection of Bull & Lifshitz, LLP and Shapiro Haber & Urmy ,LLP to serve as Lead and Liaison Counsel for the Class and (iv) grant any other such relief as the Court may deem just and proper.

Dated: May 3, 2005

**SHAPIRO HABER & URMY LLP**

**/s/Theodore M. Hess-Mahan**
Thomas G. Shapiro BBO #454680
Theodore M. Hess-Mahan BBO #557109
53 State Street
Boston, Massachusetts 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

**BULL & LIFSHITZ, LLP**
Peter D. Bull
Joshua M. Lifshitz
18 East 41st Street
New York, NY 10017
Tel: (212) 213-6222
Fax: (212) 213-9405

*Counsel for Plaintiff William Haddad*

11