UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WENDELL WILLIAMS, individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>vs.<br><br>ELAN CORPORATION, plc,<br>G. KELLY MARTIN, LARS ECKMAN<br>and SHANE COOKE,<br><br>Defendants. | CIVIL ACTION NO.: 05-cv-10413-JLT |

**MEMORANDUM OF LAW IN SUPPORT OF THE WILLIAMS GROUP'S MOTION FOR CONSOLIDATION OF RELATED CASES AND APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

Plaintiffs and class members Wendell Williams, Donato Pasquarelli, David Francoeur and Daniel Leahy (collectively, "the Williams Group"), by and through their selected counsel, respectfully submit this memorandum of law in support of the Williams Group's motion for the consolidation of all related actions into the above-entitled and numbered cause, for the Williams Group's appointment as Lead Plaintiff in the consolidated action, and for the appointment of the Williams Group's selected counsel, Johnson & Perkinson, as Lead Counsel and Law Offices of Peter A. Lagorio as Local Counsel for the putative plaintiff class ("Class") as follows:

**I. INTRODUCTION**

Plaintiff Wendell Williams, a member of the Williams Group, filed this action through Johnson & Perkinson on March 4, 2005 on behalf of a putative class of purchasers of Elan Corporation, plc ("Elan") securities between February 18, 2004 and

1

February 25, 2005, inclusive.[1] On March 31, 2005, Plaintiff Williams filed an Amended Complaint ("Complaint") enlarging the putative class to include all purchasers of Elan securities between January 29, 2004 and March 30, 2005 ("Class Period").[2] The Class is seeking remedies against Elan, G. Kelly Martin, Lars Eckman and Shane Cooke (collectively "Defendants") under the Securities Exchange Act of 1934 ("Act"). Each member of the Williams Group has completed a certification indicating that member's desire to serve as a lead plaintiff in this action. *See* Certification(s) of Wendell Williams, Donato Pasquarelli, David Francoeur and Daniel Leahy, attached hereto as Exhibits 3-6. The Williams Group respectfully submits that it is "the most adequate plaintiff" in this action as defined by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and therefore brings this motion for its appointment as Lead Plaintiff to represent the Class. The Williams Group also seeks the Court's approval of its choice of Johnson & Perkinson to serve as Lead Counsel for the Class and Law Offices of Peter A. Lagorio to serve as Local Counsel.

## II. FACT SUMMARY AND ALLEGATIONS

Elan, based in Dublin, Ireland, is a biotechnology research company engaged in the development and commercialization, with partner Biogen Idec, Inc. ("Biogen") of Tysabri, a monoclonal antibody designed to treat relapsing-remitting multiple sclerosis ("MS") by significantly reducing the rate of relapses. During the Class Period, defendants were conducting and completing clinical trials of Tysabri, which were being run simultaneously by both Biogen and Elan, primarily in the United States. These trials were required to obtain complete Food and Drug Administration ("FDA") approval to

---

[1] A copy of the *Williams* Complaint is attached as Exhibit 1.
[2] A copy of the First Amended Complaint is attached hereto as Exhibit 2.

2

fully market Tysabri as a treatment for MS.[3] Throughout the Class Period, defendants caused Elan to materially misrepresent and omit the potential risks of Tysabri and the results of the clinical trials, causing Elan's securities to trade at artificially inflated prices.

The true facts, which were known by each of the defendants, were concealed from the investing public during the Class Period. The defendants knew that Tysabri posed a serious risk of immune system side effects, and that the drug had indeed caused serious immune system side effects on patients during the clinical trials. For instance, the defendants knew that Tysabri, like other MS drugs, made patients susceptible to neurological disorders, such as progressive multifocal leukoencephalopathy ("PML"), by changing the way certain white blood cells function. Defendants knew and/or recklessly disregarded known facts that MS drugs can cause greater incidents of neurological diseases to occur, and significantly downplayed or ignored the potential risks posed by Tysabri. Defendants concealed these facts in order to fast track Tysabri for FDA approval so that they could market the drug sooner and reap the financial benefits. Finally, Defendants knew, or were reckless in not knowing, that patients in the clinical trials had developed PML as a result of taking Tysabri and concealed these cases from the market, thus significantly reducing the chance that the drug would attain final FDA approval and substantially reducing its marketability.

On February 28, 2005, Elan reported the surprising news that a patient in its Tysabri clinical trials had died as a result of contracting PML and that another patient had probably contracted the disease. This partial disclosure of the potential risks of the drug caused Elan's shares to plummet, dropping approximately 70% of the share price.

---

[3] Throughout the Class Period, Elan and Biogen were simultaneously conducting clinical trials of TYSABRI designed to study its potential for use as a treatment for other diseases, such as Crohn's Disease and rheumatoid arthritis.

3

However, even when defendants released the partial disclosure on February 28, 2005, they claimed that PML had only been contracted by patients who had participated in a study in which they were given both Tysabri and another MS drug already on the market, Avonex, manufactured by Elan's partner, Biogen. However, on March 31, 2005, Defendants were forced to reveal that a patient taking part in a previous study, who had only been prescribed Tysabri, had also developed PML in 2003 and that the casual link between the drug and PML could no longer be limited to a combination of Tysabri and Avonex. As the news that earlier statements regarding the combination of Tysabri and Avonex proved false, the stock declined further, dropping another 50%.

Plaintiffs allege that throughout the Class Period, Defendants materially misrepresented the results of the Tysabri trials, the risks involved with the drug and the potential effects of those risks upon the drug's ultimate marketability. Thus, Defendants' material misrepresentations and omissions significantly and artificially inflated the price of Elan securities throughout the Class Period.

### III. ALL SUBSTANTIALLY-SIMILAR ACTIONS PENDING IN THIS DISTRICT SHOULD BE CONSOLIDATED AS SHOULD ANY SUBSEQUENTLY-FILED, SUBSTANTIALLY-SIMILAR ACTIONS

It is believed there are several other actions presently pending in this District alleging class-action, securities-fraud claims against Defendants on behalf of the purchasers of Elan securities during either the current Class Period or the original class period and asserting essentially identical and overlapping class claims for relief.[4] The Williams Group respectfully submits that these actions should be transferred to this Court

---

[4] Plaintiffs are aware of the following cases pending against Defendants: *Williams v. Elan Corp., et al.*, 05-cv-10413-JLT; *Sidney D. Feldman Family Trust v. Elan Corp., et al.*, 05-cv-10481-JLT; *Barnett et al. v. Elan Corp., et al.*, 05-cv-02860-RJH (S.D.N.Y.); *Maloff et al. v. Elan Corp., et al.*, 05-cv-03166-RJH (S.D.N.Y.); *Hunt v. Elan Corp., et al.*, 05-cv-02367 (N.D. Ill.).

and consolidated into the above titled and numbered cause. Consolidation is appropriate when, as appears to be the case here, there are actions involving common questions of law or fact or if subsequent actions involving common questions of law or fact subsequently are filed. *See* Fed.R.Civ.P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990), *cert. denied*, 498 U.S. 920 (1990) ("considerations of judicial economy favor consolidation").

Conversely, to the extent there are pending actions that involve different courses of conduct during substantially different time periods, such cases should *not* be consolidated with this action because such consolidation would prejudice the progress of this action as issues unrelated to the Williams Group's claims will inevitably inhibit the progress of this litigation to the detriment of members of this Class. In addition, cases that share the same class period, but complain of separate courses of conduct perpetrated by common defendants, should not be consolidated with this action for the same reason.

## IV.  THE WILLIAMS GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A.     The Procedure Required by the PSLRA

The PSLRA provides that, within twenty days of the time a class action is filed, "[T]he plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported class (I) of the pendency of the action, the claims asserted therein and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i). The PSLRA further prescribes that within 90 days after publication of the notice, the court shall consider any motion made

by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff", the PSLRA provides:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that:
> > (aa) has either filed the complaint or made a motion in response to a notice...;
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See generally In re Lernout & Hauspie Securities Litigation*, 138 F.Supp.2d 39, 42-43 (D.Mass. 2001); *See also Greebel v. FTP Software*, 939 F.Supp. 57, 64 (D.Mass. 1996).

**B.    The Williams Group Has Satisfied the Requirements of the PSLRA**

**(1)    The Requisite Notice Was Timely and Properly Filed**

Plaintiff Williams, who filed the first action against Elan based upon these same facts and course of conduct on March 4, 2005 through his attorneys, Johnson & Perkinson, caused notice of this action to be published over a national business news wire on March 4, 2005. *See* Copy of Notice attached hereto as Exhibit 7. This notice advised potential class members of the pendency of the action, the claims asserted, the proposed class period, and of the opportunity to seek lead plaintiff status as required by the PSLRA. Such publications have consistently been recognized as a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated business-oriented publication or wire services." *Greebel v. FTP Software*, 939 F.Supp.

57, 62-64 (D.Mass. 1996); *See also In re Star Gas Securities Litigation*, 2005 WL 818617, *2 (D. Conn. April 8, 2005)(accepting Primzone news wire as a national publication meeting this standard). Accordingly, the notice requirements of the PSLRA have been satisfied.

### (2) The Williams Group's Motion is Timely

The 60 day time period during which class members may move to be appointed lead plaintiffs herein under 15 U.S.C. § 78u-4(a)(3)(A) and (B) expires on May 3, 2005. The Williams Group has satisfied this time-period requirement by filing its Motion for Appointment as Lead Plaintiffs and Selection of Lead Counsel on May 3, 2005.

### C.    The Williams Group Is the "Most Adequate Plaintiff"

Congress passed the PSLRA in part because of concerns about "lawyer-driven" securities class actions -- that is, litigation initiated by plaintiffs' lawyers who recruit large numbers of shareholders as clients, control the strategy of the lawsuit, and collect large fees out of the resulting settlement or judgment. *See, e.g. Coopersmith v. Lehman Bros., Inc.*, 344 F.Supp.2d 783, 788 (D.Mass. 2004) ("Congress enacted the PSLRA to remedy perceived abuses in class actions brought under the federal securities laws, in particular 'the belief that the plaintiffs' bar had seized control of class action suits'") (citations omitted); *See also* Statement of Managers — The "Private Securities Litigation Reform Act of 1995," H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 32 (1995) *reprinted in* 1995 U.S.C.C.A.N. 731.

The lead plaintiff provision of the PSLRA is the primary tool Congress chose to remedy this problem. *See, e.g., In re Milestone Scientific Sec. Litig.*, 187 F.R.D. 165, 174 (D.N.J. 1999) (finding that Congress enacted the PSLRA in order to "ensure more

effective representation of the interests of investors in private securities class actions"). *See also In re Lernout & Hauspie Securities Litigation*, 138 F.Supp.2d 39, 43 (D.Mass. 2001) ("One key aim was 'to empower investors so that they – not their lawyers – exercise primary control over private securities litigation.'") (citation omitted). The PSLRA provides that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members [called] the 'most adequate plaintiff.'" 15 U.S.C. § 78 u-4(a)(3)(B)(i).

Although there has been some debate concerning whether groups of plaintiffs with no pre-existing ties should be permitted to serve as lead plaintiffs, many courts have held the Act's instruction that "the court shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" demonstrates that small groups of plaintiffs may be chosen as lead plaintiffs. *See, e.g., See In re Lernout & Hauspie Securities Litigation*, 138 F.Supp.2d 39, 44-45 (D.Mass. 2001); *In re Baan Company Sec. Litig.*, 186 F.R.D. 214, 217 (D.D.C. 1999); *In re Oxford Health Plans, Inc. Sec. Litig.* 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 147-48 (D.N.J. 1998).

The Williams Group respectfully asserts that the most efficient approach in the circumstances presented here is to permit its members to represent the Class as lead plaintiffs. Such a small-group lead plaintiff structure is permissible under the cases cited above that have permitted the appointment of groups of lead plaintiffs. Furthermore, appointing these movants as lead plaintiffs will safeguard the interests of the Class and

promote efficiency by: (a) providing the greatest possible chance that one of the lead plaintiffs will eventually be certified as a class representative; (b) ensuring representation of a variety of types of Elan securities, including both common stock and options purchasers/sellers; and (c) avoiding the need to file successive motions for class certification in the event a single lead plaintiff is found, for reasons specific to the plaintiff, to be an inadequate class representative or to lack standing to pursue claims on behalf of the ultimate Class.

### (1) The Williams Group Has the Largest Financial Interest in the Relief Sought by the Class

As evidenced by their executed Certifications, the Williams Group purchased 192,700 shares of Elan ADR equities, as well the purchase or sale of 3,028 options contracts, during the Class Period and have suffered a loss of $2,081,914.44.[5] *See* Exhibit 8, attached hereto compiling the Williams Group's losses. Therefore, the Williams Group's total loss attributable to Defendants' fraud is $2,081,914.44. Thus, it is clear the members of the Williams Group have a significant financial interest in this case.

The Williams Group believes it has the largest financial interest of any group or individual who has moved for appointment as lead plaintiff. The Williams Group has not received any evidence that any other applicant or applicant group has sustained greater

---

[5] Based on actual loss or a reasonable modification of the PSLRA's formula for determining financial interest in the litigation. The PSLRA dictates that unsold shares be deemed to have been sold at the average closing price for 90 days after the close of the class period. In this case, only 60 days have passed since the close of the original class period. As such, Wendell William's and Donato Pasquarelli's losses were calculated using the 60 day average closing price, which was $5.63. In addition, all remaining positions have had loss or profit calculations determined based upon the First-In, First-Out accounting method. Plaintiffs David Francoeur and Daniel Leahy sold all of their positions in Elan. Thus their totals reflect their total loss.

9

financial losses in connection with the purchase and/or sale of Elan securities during the Class Period. It therefore appears that the Williams Group has the greatest loss, as determined by the PSLRA. Accordingly, the Williams Group has satisfied the PSLRA requirement that it has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### (2) The Williams Group Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

As noted above, the final requirement investors must satisfy to be named as lead plaintiffs in a class action brought under the PSLRA is that they meet "the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii). As interpreted by the courts, this provision of the PSLRA requires proposed lead plaintiffs to facially demonstrate only that: (a) their claims are typical of the claims asserted by other class members; and (b) they will be adequate representatives of the class ("Rule 23 Requirements"). *See In re Lernout & Hauspie Securities Litigation*, 138 F.Supp.2d 39, 46 (D.Mass. 2001) ("Only the last two prongs, typicality and adequacy, need be satisfied for purposes of this inquiry."); *See also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998)("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 296 (E.D.N.Y. 1998) ("the court need only consider whether [potential lead plaintiffs] meet the typicality and adequacy standard of Rule 23"). As discussed more fully below, the Williams Group easily satisfies these Rule 23 requirements.

### i. The Williams Group's Claims Are Typical of the Class

As set-out in more detail in the Complaint, the Class alleges Defendants carried out a plan, scheme, and course of conduct that caused the Class to purchase Elan securities at artificially inflated prices during the Class Period. The "test of typicality refers to the nature of the claim." *Jones v. Shalala*, 64 F.3d 510, 514 (9th Cir. 1995). Thus, typicality exists because the claims asserted by the Williams Group "involve the same legal theory" and "arise from the same events or course of conduct ... as do the claims of the rest of the class." *In re Lernout & Hauspie Securities Litigation*, 138 F.Supp.2d 39, 46 (D.Mass. 2001). All of the Class's claims, including the Williams Group's, arise from the same course of conduct and are based on the same legal theory.

  ii. **The Williams Group Will Adequately Represent the Class**

The adequacy requirement of Rule 23 requires that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. at 23(a)(4). It is well-established that Rule 23's adequacy requirement is satisfied where: (a) "the representative's interests do not conflict with the class members' interest; and (b) the representatives and their attorney are able to prosecute the action vigorously". *In re Blech Sec. Litig.*, 187 F.R.D. 97, 106 (S.D.N.Y 1999); *See also Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985).

The Williams Group satisfies both prongs of the adequacy test. First, it does not appear any conflicts of interest exist between the members of the Williams Group and other members of the Class. *See In re Lernout & Hauspie Securities Litigation*, 138 F.Supp.2d 39, 46 (D.Mass. 2001) ("There is no indication from the record that the Quaak Group is in conflict with any plaintiffs on the substance of the case."). Indeed, it was

11

Plaintiff Williams, a member of the Williams Group, who filed the first action against Elan seeking recovery for the Class. In addition, the Williams Group contains members who purchased both equity and option securities, and includes members who purchased securities throughout the Class Period, including during the time period encompassed by the enlarging of the Class Period and during the time period in which Defendants have admitted knowledge of the fraud but had still not informed the market. It is thus unlikely that the Williams Group's interests will be found to be in conflict with the Class's claims however they develop. Accordingly, there is no reason to depart from the well-established preference for the classwide resolution of disputes involving alleged violations of the federal securities laws. *See, e.g., In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y 1999)("Class action treatment of related claims is particularly appropriate when plaintiffs seek redress for violations of the securities laws. It is well-recognized that private enforcement of these laws is a necessary supplement to government regulation."); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 197 (S.D.N.Y. 1992) ("In light of the importance of the class action device in the context of securities fraud litigation, the Second Circuit has held that [Rule 23] factors are to be construed liberally.").

Second, the Williams Group has chosen counsel with extensive experience in class-action litigation, particularly in cases brought under federal securities laws. *See* Section V, *infra*. In light of the fact that the adequacy of class counsel is presumed in the absence of evidence to the contrary, it is therefore respectfully submitted that the Court should presume the Williams Group's choice of counsel can and will prosecute this action vigorously. *See Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 211 (N.D.Tex.

1997) (*citing* Charles A. Wright et al., 7A *Federal Practice and Procedure* § 1765 (2d ed. 1986)).

The adequacy of the Williams Group also is supported by the fact that they have each executed a certification attesting to their willingness to assume the responsibilities of class representative. *See* Exhibits 3-6. Moreover, the Williams Group's substantial financial stake in this litigation, in both absolute and personal terms, assures that they will vigorously pursue and prosecute this action. *See, e.g., In re Cendant Corp. Litigation*, 182 F.R.D. 144, 147-48 (D.N.J. 1998)(where lead plaintiffs have "suffered enormous losses ... it is unrealistic to assume they would not travel every avenue that could potentially enhance their personal recovery").

## V. THE COURT SHOULD APPROVE THE WILLIAMS GROUP'S CHOICE OF COUNSEL

Section 21D(a)(3)(B)(v) of the PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *See also Coopersmith v. Lehman Bros., Inc.*, 344 F.Supp.2d 783, 788 (D.Mass. 2004) ("'Giving the Lead Plaintiff primary control for the selection of counsel was a critical part of Congress' effort to transfer control of securities class actions from lawyers to investors.'") (citations omitted). Thus, a court should not disturb lead plaintiffs' choice of counsel unless "necessary to protect the interests of the plaintiff class." *See* 141 Cong. Rec. H 13691, 104th Cong., at H13700 (Nov. 28, 1995). Courts have followed this mandate. *See, e.g., Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 211 (N.D.Tex. 1997).

In this case, the Williams Group has selected Johnson & Perkinson to serve as Lead Counsel. Johnson & Perkinson possesses extensive experience in the area of class

action securities litigation and has successfully prosecuted numerous complex securities fraud class actions as sole or co-lead counsel on behalf of injured investors. *See* Johnson & Perkinson Resume, Exhibit 9. As detailed therein, Johnson & Perkinson has a well-deserved reputation for excellence in the field of class-action securities litigation and is well-qualified to prosecute this litigation on behalf of the Class. For example, Chief Judge Kane of the United States District Court for the District of Colorado, in a case that initially was dismissed but fully reinstated following plaintiffs' successful appeal to the Tenth Circuit, commented on the firm's qualifications:

> "the case was indeed hard fought, and most importantly, it took a considerable, I think, amount of determination on the part of Mr. Schwartz and his counsel to appeal my decision, and that, indeed, as you point out, new law was made on that appeal for this Circuit". *In re Celestial Seasonings Securities Litigation*, April 25, 2000 Transcript from Hearing on Final Approval of Settlement, p. 5;

\* \* \*

> "...this Court was blessed with vigorous and talented counsel of high standing and reputation on both sides, which made it truly a pleasure to have this case in front of me." *Id.*, p. 7;

\* \* \*

> "I think this is a fair result. You've done an excellent job, and you haven't done it without equally competent opposition. So you've earned your money." *Id.*, p. 15.

Johnson & Perkinson possess particular experience in this action, as it was the firm which put together the first Complaint and the Amended Complaint in this action, has communicated with hundreds of Class members and potential witnesses, and, as such, is in the best position to pursue this action on behalf of the Class. The Court can be assured

14

that the Class will receive the highest caliber of legal representation available if Johnson & Perkinson are appointed Lead Counsel in this case.

## VI. CONCLUSION

The Williams Group satisfies all the requirements to have its members appointed as Lead Plaintiffs under the PSLRA and is therefore the "most adequate plaintiff" in this litigation and its members therefore should be named as Lead Plaintiffs by the Court. The Williams Group has selected Johnson & Perkinson to serve as Lead Counsel for the Class. In addition, all cases based upon the same course of conduct as the *Williams* Amended Complaint, with substantially the same Class Period, should be transferred to this Court and consolidated into this action. Proposed Lead Counsel has and will continue to vigorously pursue the allegations of the Class against Defendants and Plaintiffs' selection of Lead Counsel therefore should be named as Lead Counsel by the Court.

DATED: May 3, 2005                                              THE WILLIAMS GROUP

By: *Peter A. Lagorio*
Peter A. Lagorio (BBO#567379)
63 Atlantic Avenue
Boston, MA 02110
Tel: (617) 367-4200
Fax: (617) 227-3384

Dennis J. Johnson, Esq.
Robin A. Freeman, Esq.
JOHNSON & PERKINSON
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Tel: (802) 862-0030
Fax: (802) 862-0060

*Counsel to Plaintiffs*