UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| WENDELL WILLIAMS, Individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>ELAN CORPORATION, PLC., G. KELLY MARTIN, LARS ECKMAN and SHANE COOKE,<br><br>　　　　　　Defendants. | Case No. 05-CV-10413 (JLT)<br><br><u>CLASS ACTION</u> |
| SIDNEY D. FELDMAN FAMILY TRUST, Individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>ELAN CORPORATION, PLC., G. KELLY MARTIN, LARS ECKMAN and SHANE COOKE,<br><br>　　　　　　Defendants. | Case No. 05-CV-10481 (JLT)<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
THE INSTITUTIONAL INVESTOR GROUP FOR CONSOLIDATION, APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF SELECTION
OF LEAD COUNSEL AND LIAISON COUNSEL AND
<u>IN OPPOSITION TO THE COMPETING MOTIONS</u>**

Lead Plaintiff movants MN Services, Activest Investmentgesellschaft mbH, Electronic Trading Group L.L.C., Third Millenium Trading, LLP, Horatio Capital LLC, and Donald S. Frank (collectively, the "Institutional Investor Group" or "Movants") hereby submit this memorandum of law in further support of its motion for an order: (1) consolidating the above-captioned actions (the "Actions"); (2) appointing Movants Lead Plaintiff in the Actions; (3) approving Movants' selection of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") and Entwistle & Cappucci LLP ("Entwistle & Cappucci") as Co-Lead Counsel and Moulton and Gans P.C. ("Moulton & Gans") as Liaison Counsel.

The Institutional Investor Group's motion should be granted, and the other motions denied, because it "has the largest financial interest in the relief sought by the class" and otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Institutional Investor Group's loss of **$17,985,086.31** is larger than the financial interests reported by the other movants, who claim losses of $4,247,383, $2,081,914, $445,947, $418,255 and $211,672. In addition to having the largest financial interest as a group, Institutional Investor Group movants Electronic Trading Group, LLC and Third Millenium, with a financial interest of $7,198,396 and $4,441,144, respectively, each, standing alone, has the largest financial interest of any one of the other movants. Under these circumstances, and because the Institutional Investor Group meets the adequacy and typicality prongs of Fed. R. Civ. P.23, and is comprised of four institutional investors, which are preferred lead plaintiffs, the Court should grant the Institutional Investors' motion in its entirety. Moreover, the Institutional Investor Group has already taken important steps to protect the interests of the class. As detailed below, it has already filed an amended complaint, containing new factual allegations, and the ongoing

investigation of its counsel has uncovered important facts that would benefit the prosecution of this action. For these reasons, among others, all other motions should be denied.

## POINT I

### THE INSTITUTIONAL INVESTOR GROUP HAS THE LARGEST FINANCIAL INTEREST

The criteria for appointment of lead plaintiff are straightforward. The Ninth Circuit has described the procedure as follows:

> [T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy." If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff.

*In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) (footnotes omitted). See also *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 42 (D. Mass. 2001) (Saris, J.). The following chart lists the movants before the Court and their financial interests, as reported in their motion papers:

| Movant Group | Alleged Financial Losses |
|---|---|
| Institutional Investor Group (Total) | $ 7,985,086 |
| The Conus Fund Group | $4,247,383 |
| The Williams Group | $2,081,914 |
| R. Christopher Carpezzi and Donald Kelly | $445,947[1] |
| Kyle Newcomer | $418,255 |
| William Haddad | $211,672 |

---

[1] Counsel for Mr. Carpezzi and Mr. Kelly have informed the Institutional Investor Group that Mr. Carpezzi and Mr. Kelly intend to withdraw their motions and support the motion of the Institutional Investor Group.

DOCS\283438v2                                            - 2 -

The Institutional Investor Group has by far the largest financial interest in the litigation and, moreover, its members Electronic Trading Group, LLC and Third Millenium have by far the largest financial interest of any individual movant. Thus, only the Institutional Investor Group satisfies the PSLRA's "largest financial interest" requirement. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).[2]

## POINT II

### THE INSTITUTIONAL INVESTOR GROUP MEETS THE REQUIREMENTS AND WOULD FURTHER THE GOALS OF THE OF THE PSLRA

**A.  The Institutional Investor Group is Adequate and Typical**

Once the court has identified the movant with the largest financial interest in the relief sought by the class, it must then focus its attention on *that* plaintiff and determine, based on the information it has provided in his pleadings and declarations, whether it satisfies the requirements of Rule 23 in particular, those of typicality and adequacy. *In re* Cavanaugh, 306 F.3d at 730 (emphasis in original). As has been demonstrated in its opening brief, the Institutional Investor Group meets the adequacy and typicality elements of Fed. R. Civ. P. 23. *See* Institutional Investor Group Mem. at 6-10. *See also In re Lernout & Hauspie Sec. Litig*., 138

---

[2] Additionally, the Conus Fund Group's calculations appear to contain several errors. First, there are discrepancies between the schedule A to the Conus Fund Group members' certifications and loss chart with respect to the number of shares sold by Conus Fund Group members on March 18, 2004: Specifically, The Conus Fund Schedule A lists 34,100 shares, the loss chart lists 27,500 shares; The Conus Fund (QP): Schedule A lists 5,300 shares, the loss chart lists 4,200 shares; the Conus Fund Offshore Schedule A lists 5,600 shares, the loss chart lists 4,490 shares; and the East Hudson Inc. (BVI) Schedule A lists 5,000 shares, the loss chart lists 3,900 shares. Additionally, the loss chart contains several purchase prices that are at odds with the purchase prices listed on the Schedule A of Conus Fund's certification. The certification lists a purchase on October 18, 2004 at $25.9366 per share, a purchase on November 23, 2004 at $27.0658 per share and a purchase on January 14, 2005 at $27.9562 per share. In contrast, the loss chart for each of those purchases shows a price of $24.20 per share, which, moreover, is outside the range of trading on each of those days.

F. Supp. 2d at 45 ("Only the last two prongs [of Rule 23], typicality and adequacy, need to be satisfied for purposes of this inquiry.") (citations omitted). The Institutional Investor Group members are typical because they stand in the shoes of all other Class members and make the same allegations: that they were damaged by transacting in Elan securities during the Class Period at prices that were artificially inflated by defendants' materially false and misleading statements and the subsequent decline in the price of the Company's stock, and that defendants violated Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5. *See In re Tyco Int'l., Ltd. Sec. Litig.*, No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 13390, at *21-22 ("To satisfy Rule 23's typicality requirement, a class representative's injuries must arise from the same event or course of conduct as the injuries allegedly suffered by other class members, and its claims must be based on the same legal theory.") *citing Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 22 (D. Mass. 1991). The Institutional Investor Group members are adequate, as that term is defined in this context, because their interests do not conflict with the interests of other class members and because their selected Co-Lead Counsel, Milberg Weiss and Entwistle & Cappucci, have successfully represented plaintiffs in some of the largest securities class actions in history and are unquestionably well suited to serve the class as Lead Counsel. *See In re Tyco Int'l., Ltd. Sec. Litig.*, 2000 U.S. Dist. LEXIS 13390, at *23 ("Whether a class representative 'will fairly and adequately protect the . . . class' . . . depends upon (1) whether the interests of the representative will conflict with the interests of any class members, and (2) whether the representative is represented by qualified, experienced counsel capable of vigorously prosecuting the proposed litigation.") (citations omitted). As discussed below, in addition to meeting the requirements of the statute, the Institutional Investor Group would make an ideal Lead Plaintiff.

### B. Involvement Of The Institutional Lead Plaintiff Group Will Significantly Benefit Absent Class Members

The Institutional Lead Plaintiff Group is comprised of four institutional investors and an individual. One of the PSLRA's main goals was to encourage institutional investors to take the reins in securities class actions:

> Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members. See H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690.

*In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

Appointing the Institutional Investor Group, which is a small, cohesive group comprised of institutional investors, each of which has a large financial stake in this litigation, would satisfy the PSLRA's aims of having the plaintiff class represented by sophisticated institutional investors.

### C. The Institutional Investor Group Has Already Taken Important Steps to Protect the Interests of the Class

The Institutional Investor Group, through its counsel, has expended, and continues to expend, vast resources in the investigation of Elan's alleged securities fraud. The results of the investigation, which will be particularized in the consolidated amended complaint if the Institutional Investor Group it is appointed Lead Plaintiff, will strengthen the case against defendants to the benefit of all class members.

Shortly after news of the first of the two deaths tied to Elan's medication became public, counsel for the Institutional Investor Group formed a team and launched an extensive investigation of Elan and Biogen (Elan's partner in marketing Tysabri). As part of the investigation, the investigative team retained a physician with a specialty in the treatment of

multiple sclerosis and, in consultation with him, conducted an extensive review of the relevant scientific literature and articles appearing in the popular press. The investigative team then interviewed dozens of witnesses, at length, including researchers involved in the early development of the drug, participants in the development of the Tysabri trials, and leading specialists in the field of neurology. The investigative team also obtained clinical trial data related to the Tysabri clinical trial for analysis. Thus, the Institutional Investor Group has *already* demonstrated its commitment to the prosecution of this action and its investigation is believed to be well ahead of any other plaintiff or lead plaintiff movant. Its motion should be granted.

## CONCLUSION

For the foregoing reasons, the Institutional Investor Group satisfies the PSLRA's requirements for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). Movants respectfully request that this Court: (1) consolidate the Actions presently pending in the District of Massachusetts; (2) appoint it as Lead Plaintiff pursuant to § 21D(a)(3)(B); and (3) approve its selection of Milberg Weiss and Entwistle & Cappucci as Co-Lead Counsel, and Moulton & Gans as Liaison Counsel.

Dated:  May 17, 2005
       Boston, Massachusetts

Respectfully submitted:
**MOULTON & GANS, P.C.**

By**:** /s/ Nancy Freeman Gans
    Nancy Freeman Gans, BBO #184540
    33 Broad Street, Suite 1100
    Boston, MA  02109
    Telephone:  (617) 369-7979

**Proposed Liaison Counsel**

**MILBERG WEISS BERSHAD
 & SCHULMAN LLP**
Steven G. Schulman
Peter E. Seidman
Anita B. Kartalopoulos
Sharon M. Lee
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

**ENTWISTLE & CAPPUCCI LLP**
Vincent R. Cappucci
Stephen D. Oestreich
Robert N. Cappucci
299 Park Avenue
New York, NY  10171
**Proposed Lead Counsel**

<u>**CERTIFICATE OF SERVICE**</u>

    I, Peter E. Seidman, hereby certify that a true copy of the above document was served upon the attorney of record for each party.

<u>/s/ Peter E. Seidman</u>
Peter E. Seidman

DOCS\283438v2      - 7 -